Damron v. Bowlen.

Opinion delivered May 31, 1920.

DEEDS—INCAPACITY OF GRANTOR.—In a suit by an aged woman to cancel her deed to land, evidence *held* to sustain finding that she was mentally incompetent to convey.

Appeal from White Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Brundidge & Neelly,* for appellant.

1. The allegations of the complaint are wholly unsustained by the testimony. 134 Ark. 81-91.

2. No undue influence was proved. 78 Ark. 420; 49 *Id.* 367-371; 107 Atl. 537-9; 17 A. & E. Anno. Cases 984, note, 986. Mere failure of consideration without

fraud or *mala fides* is not sufficient in equity to obtain
a rescission of an executed contract. 4 R. C. L. 500. A
disposition of property induced by gratitude for kindness
or affection is not the result of undue influence. 27 A.
& E. Enc. L. 497; 118 U. S. 127-135; Redfield on Wills
522-4, 533; 84 Ark. 109; 20 Cyc. 1212.

3. The proof in the record establishes that plain-
tiff was mentally competent to excute the deed. 34 Ark.
613, 623; 136 *Id.* 72. A consideration of the entire testi-
mony and the action of plaintiff after the execution of the
deed warrants a reversal of the decree canceling it. The
burden was on plaintiff to establish by clear, strong and
conclusive evidence that she did not have sufficient men-
tal capacity to understand and comprehend the nature
and effect of her act. 100 Ark. 565; 96 *Id.* 265; 119 *Id.*
466-8; 67 Am. St. 788. See, also, 8 R. C. L. 944-5, §§ 20,
21; 115 Ark. 430; 123 *Id.* 166; 4 R. C. L. 503; Buswell on
Insanity, ch. 8, p. 216, § 194. The decree of cancellation
should be reversed.

*Gardner K. Oliphint,* on the brief for appellant.

*C. L. Pearce,* for appellee.

1. The relation of parent and child did not exist
as to appellant, even if it did as to Mrs. DeLille.

2. The evidence shows undue influence.

3. Aside from the claim that appellee was *non
compos mentis* it would be inequitable to allow appellant
to hold this property against appellee.

4. The testimony shows that appellee is *non compos
mentis.* 14 R. C. L. 589; 1 Black on Res. & Can. 676; 14
R. C. L. 590; 1 Black, Res. & Can. 691; 7 Ark. 166. See,
also, 21 R. C. L. 503; 1 Black, Res. & Can. 698, 632, 652.
Courts of equity have power to cancel the deeds of in-
sane or weak-minded persons to guard against imposi-
tion or resist importunity. 1 Pom., Eq. Jur. (4 ed.), p.
2113; 14 R. C. L. 593; 115 Ark. 430; 123 *Id.* 174; 129 *Id.*
91. See, also, 14 Ann. Cas. 505; Ann. Cases 1912 A. 702;
4 L. R. A. 637, 640.

5. The findings of the chancellor will not be disturbed if it does not appear that they are against the clear preponderance of the evidence. 81 Ark. 68; 91 *Id.* 549; 101 *Id.* 398; 121 *Id.* 550.

SMITH, J. This suit was instituted August 19, 1919, by appellee to cancel a deed which she had executed to appellant on October 26, 1918, and had delivered on the following day, to an eighty-acre farm owned by her. The deed provided that appellee should remain in full and complete possession of the land during her life, and that she should receive as her own all rents and profits therefrom, and that she should have the exclusive control and management thereof. Appellee was past seventy years, and was childless. She had no blood relatives except some nephews; but appellant and a Mrs. DeLille had both lived with appellee before they were married, and each of them called appellee mother, and she called each of them daughter. In May, 1918, appellee executed and delivered to Mrs. DeLille a deed to another eighty-acre tract of land she owned, and appellant insists that there was no more consideration for that deed than there was for her own, and that the consideration in each case was love and affection, and she insists that the fact that no suit has been brought to cancel the DeLille deed should be strongly persuasive of the grantor's capacity to execute the two deeds. This litigation does not involve the DeLille deed; but it appears that Mrs. DeLille was an adopted daughter, and had lived in appellee's home for many years, while appellant was not an adopted daughter, and had lived in appellee's home only a few months altogether; in fact, for a period of about fifteen years there was no communication between appellant and appellee. Appellee lived on the farm near Bald Knob, in White County, and appellant's home was at Bono, in Craighead County. Appellant came to appellee's home in response to a telegram signed by appellee asking her to do so, and appellee within a few days after appellant's arrival executed and delivered the deed here sought to be canceled.

It is not shown that any undue influence was exerted to obtain the deed, but the court found that appellee did not possess sufficient mental capacity to comprehend the effect of her action in executing the deed, and decreed its cancellation, and this appeal is from that decree.

Appellee testified that she was past seventy, and that her health was feeble. That she was told that she had frequently called the name of appellant during a spell of illness she had had, but that she had no recollection of having done so, and that if she did this it was done in delirium because of the fever she had, and that she was sick when she executed the deed and did not realize or appreciate what she had done, and that while she remembered something about the transaction, it was "kind of like a dream to me." Mrs. DeLille testified that appellant's husband went to town for a notary public, and that Mr. DeLille went with him, that the deed had been prepared before the notary came, and that the notary was there only a few minutes, and that appellee at the time was just getting over an attack of the influenza from which she had been suffering.

A Dr. W. A. Clark testified that he had known appellee for thirty years, and that he had been her family physician for the two years immediately preceding the time of taking his deposition. That in November or December, 1917, appellee was adjudged insane by the probate court of White County, and he was appointed her guardian, and that he served as such until April or May, 1918, when he procured his discharge. That appellee was taken to a hospital in Memphis in August, 1917, and remained there for five months, during which time her condition, both mental and physical, was very bad. That after her return from the hospital her condition was improved, but that she had since had other serious illness. He expressed the opinion that appellee was incapable of transacting ordinary business affairs, and that "her mind is like a child's mind," but that she was in better physical condition in the last three months than she had been in for more than two years before. A Dr.

Cleveland testified that he had known appellee for thirty-five years, and for the large part of that time had been her physician, and he expressed the opinion that in recent years "she has very much deteriorated both mentally and physically," and "in my opinion she was not capable of transacting important business" at the time of the execution of the deed.

J. S. Baker, a near neighbor who had known appellee intimately since 1880, testified that "her mind seemed kind of wavy," and a number of other neighbors detailed various incidents upon which they based the opinion that appellee's mentality had failed and that she was not capable of understanding and transacting important business.

A tenant on the place named Sprouse, in response to the question whether appellee had sufficient mental capacity to execute the deed, expressed the opinion that if she had mind enough to bring a suit to set her deed aside, she had mind enough to make the deed. Another tenant named Russell expressed the opinion that he had observed no change in appellee's mentality, and that she had the capacity to make the deed or other contract. He testified that no one could get along with appellee, and he had been unable to do so, and that she came into the field where he was plowing and stated that he was trespassing and ordered him out of the field.

Other witnesses who had known appellee for varying lengths of time and who had more or less association with her, expressed the opinion that she was sane. Some of these witnesses had had opportunity to see and observe appellee quite frequently, while others based opinions upon observation so slight as to carry but little weight.

The two physicians had special opportunities to observe appellee; but, even without their testimony, the evidence appears to be fairly balanced on the question of appellee's competency. The testimony of these physicians should, of course, be considered; in fact, their testimony is highly persuasive, and upon a consideration of

the whole testimony we have concluded that the finding of the court below is not clearly against the preponderance of the evidence, and the decree is, therefore, affirmed.